**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Apr 23 2012, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN J. JEWELL**
Trimble & Jewell
Evansville, Indiana

ATTORNEYS FOR APPELLEE
WILLIAM SAALWAECHTER:

**JAMES D. JOHNSON**
**MAX E. FIESTER**
Rudolph, Fine, Porter & Johnson, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LBJA INVESTMENTS, LLC, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 74A05-1105-PL-307 |
| | ) | |
| BRIAN KAMUF[1] and | ) | |
| WILLIAM K. SAALWAECHTER, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE SPENCER CIRCUIT COURT
The Honorable Jon A. Dartt, Judge
Cause No. 74C01-0806-PL-305

**April 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

STATEMENT OF THE CASE

LBJA Investments, LLC, appeals the trial court's striking of portions of its motion for summary judgment, denial of its motion for summary judgment, and grant of summary judgment in favor of William Saalwaechter.

We affirm.

ISSUES

LBJA presents ten issues, which we consolidate and restate as:

I.     Whether LBJA's claim of a vendor's lien is waived.

II.    Whether the trial court erred by granting Saalwaechter's motion to strike portions of LBJA's motion for summary judgment.

III.   Whether the trial court erred by denying LBJA's motion for summary judgment and granting Saalwaechter's motion for summary judgment.

FACTS AND PROCEDURAL HISTORY

On September 27, 2006, J. Wayne Murphy, on behalf of and as a principal of LBJA, executed a general warranty deed transferring property from LBJA to Brian Kamuf. The subject property contains approximately 351 acres of farmland located in Spencer County, Indiana. On the same day, both parties signed an agreement ("LBJA/Kamuf Agreement") stating that Kamuf would pay $400,000 to LBJA for the property and that LBJA had an option to repurchase the property for $400,000 by November 13, 2006. The deed and the LBJA/Kamuf Agreement were prepared by

---

[1] Appellee-Defendant Brian Kamuf is not involved in this appeal and has not filed a brief. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

2

Thomas Carroll, a Kentucky attorney who participated, in various capacities, in these transactions.

Also on September 27, 2006, after receiving the deed for the property from LBJA, Kamuf conveyed the property to Saalwaechter by general warranty deed. Pursuant to an agreement ("Kamuf/Saalwaechter Agreement"), Saalwaechter paid Kamuf $400,000 for the property, and Kamuf was given an option to repurchase the property for $400,000 that expired on November 13, 2006. Carroll also prepared the documents for this transaction. Kamuf never exercised the option to repurchase the land from Saalwaechter and never paid LBJA the $400,000 purchase price.

In June 2008, LBJA filed a lawsuit against Kamuf and Saalwaechter claiming that it received neither the $400,000 for the property nor reconveyance of the property as set forth in the LBJA/Kamuf Agreement. Saalwaechter then filed a counter-claim, as well as a third party claim against Murphy. Saalwaechter moved for summary judgment in May 2009 and again in April 2010, but the trial court denied both motions. Subsequently, on February 7, 2011, LBJA filed a motion for summary judgment. On February 15, 2011, the trial court entered a default judgment as to Kamuf. On March 11, 2011, Saalwaechter filed a motion to strike portions of LBJA's motion for summary judgment and a cross-motion for summary judgment. Following a hearing, the trial court granted Saalwaechter's motion to strike portions of LBJA's motion for summary judgment as well as his cross-motion for summary judgment. The trial court denied LBJA's motion for summary judgment. This appeal ensued.

3

## DISCUSSION AND DECISION

## I. VENDOR'S LIEN

LBJA contends that because Kamuf never paid it the $400,000, its conveyance of the property to Kamuf resulted in a vendor's lien in its favor. LBJA concedes in its brief, however, that it did not plead a vendor's lien as part of its amended complaint or refer to a vendor's lien in its pleadings or motions. Appellant's Br. p. 15. Instead, LBJA claims that the "operative facts incidental to a vendor's lien" were submitted to the trial court for consideration. *Id.* In support of this argument, LBJA cites to paragraphs of its amended complaint, its motion for summary judgment, and its brief in support of summary judgment.

Generally, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002). "This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties." *Id.* Conversely, appellate courts have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision; thus, it is not the forum for the initial decisions in a case. *Id.* The rule of waiver serves, in part, to protect the integrity of the trial court so that the trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. *Id.* Accordingly,

4

an argument or issue not presented to the trial court is generally waived for appellate review. *Id.*

Our review of LBJA's amended complaint, motion for summary judgment, and brief in support thereof discloses that the theory of a vendor's lien is never mentioned. The paragraphs of these items to which LBJA directs us refer to the LBJA/Kamuf Agreement and deed as it relates to LBJA's claim of fraud; Kamuf's breach of the LBJA/Kamuf Agreement as it relates to LBJA's claim of breach of contract; Carroll's knowledge of the LBJA/Kamuf Agreement as it relates to LBJA's claim of unjust enrichment; Carroll's involvement in both transactions; and the LBJA/Kamuf transfer as an equitable mortgage. Further, review of the transcript of the summary judgment hearing reveals that the theory of a vendor's lien was never referred to, discussed, or argued. Thus, neither in any of its pleadings or motions nor in its argument to the trial court at the summary judgment hearing did LBJA even attempt to demonstrate how these events and representations relate to the creation of a vendor's lien. Finally, the trial court's order on summary judgment does not mention a vendor's lien.

Furthermore, LBJA essentially argues that all the facts are present to establish a vendor's lien so the trial court could simply put these facts together and come up with the theory of a vendor's lien. However, LBJA never actually stated to the trial court that a vendor's lien was established by the facts or that it was relying on the theory of a vendor's lien. It is not the task of the trial court to marshal and sort through the facts and develop a legal theory that provides recovery on those facts. That is the task of the

5

advocate. We therefore conclude that LBJA presents the issue of the existence of a vendor's lien for the first time on appeal, which it may not do. Therefore, this issue is waived. *See Yoost v. Zalcberg*, 925 N.E.2d 763, 770 (Ind. Ct. App. 2010) (holding that issues not raised before trial court on summary judgment cannot be argued for first time on appeal and are waived), *trans. denied*.

## II. MOTION TO STRIKE

LBJA asserts that the trial court erred by striking a portion of its motion for summary judgment. We review a trial court's order on a motion to strike for an abuse of discretion. *Williams v. Tharp*, 914 N.E.2d 756, 769 (Ind. 2009). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Illiana Surgery & Med. Ctr., LLC v. STG Funding, Inc.*, 824 N.E.2d 388, 399 (Ind. Ct. App. 2005). Further, the trial court's decision will be reversed only upon a clear showing of prejudicial error. *Sun Life Assur. Co. of Can. v. Ind. Dep't. of Ins.*, 868 N.E.2d 50, 57 (Ind. Ct. App. 2007), *trans. denied*.

LBJA filed its original complaint in this action in June 2008, claiming fraud and breach of contract. More than two years later, in December 2010, LBJA amended its complaint and added claims of unjust enrichment, conversion, and tortious interference with a contractual relationship. Neither the original complaint nor the amended complaint contain a claim of equitable mortgage. Several months after the discovery cut-off of October 29, 2010, and forty-three days before trial, LBJA filed its motion for summary judgment on February 7, 2011, raising for the first time the theory of equitable

mortgage. Saalwaechter moved to strike that portion of LBJA's motion for summary judgment, and the trial court granted Saalwaechter's motion.[2]

LBJA's argument on this issue consists of a list of factors our courts look to for the creation of an equitable mortgage and its contention that its equitable mortgage argument is "not so much a new theory of recovery as a request for the Court to determine the substance of the KAMUF to SAALWAECHTER transfer of the property under Indiana law." Appellant's Br. p. 36. Saalwaechter, on the other hand, contends he would have been prejudiced by this eleventh-hour addition of new theories of the plaintiff's case after the discovery cut-off and little more than a month before trial. In granting Saalwaechter's motion to strike, the trial court stated, "This Court allowed ample time for Plaintiff, LBJA Investments, LLC, to conduct discovery and develop the theories of its case against Defendant, William Saalwaechter, and this Court denied a prior Motion For Summary Judgment filed by Defendant Saalwaechter against Plaintiff LBJA largely on those grounds. . . . Furthermore, the Court will not allow new theories to be asserted in this case at this late date before trial." Appellant's App. pp. 109-10. LBJA has failed to establish that the trial court's decision is against the facts and

---

[2] LBJA's motion for summary judgment also raised the theory of constructive fraud and the remedy of rescission, neither of which had been raised previously by LBJA. The trial court struck these two theories in addition to striking the theory of equitable mortgage; however, on appeal, LBJA does not challenge the trial court's striking of these two theories. *See Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.*, 727 N.E.2d 466, 469 (Ind. Ct. App. 2000) (determining that "[w]hen an appellant fails to raise and argue in his or her appellant's brief a cause of action disposed of below, he or she waives the right to challenge the trial court's disposition on appeal"), *trans. denied*.

circumstances before it. We affirm the trial court's grant of Saalwaechter's motion to strike.

### III. SUMMARY JUDGMENT

The purpose of summary judgment is to terminate litigation in which there is no real factual dispute and which can be determined as a matter of law. *Sheehan Constr. Co. v. Cont'l Cas. Co.*, 938 N.E.2d 685, 689 (Ind. 2010). On appeal from a grant or denial of summary judgment, our standard of review is identical to that of the trial court: whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4-5 (Ind. 2010); *see also* Ind. Trial Rule 56(C). The fact that the parties made cross-motions for summary judgment does not alter our standard of review. We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *City of Mishawaka v. Kvale*, 810 N.E.2d 1129, 1133 (Ind. Ct. App. 2004). Moreover, an appellate court may affirm summary judgment if it is proper on any basis shown in the record. *Pfenning v. Lineman*, 947 N.E.2d 392, 408-09 (Ind. 2011).

### A. Denial of LBJA's Motion for Summary Judgment

LBJA claims that the trial court erred by denying its motion for summary judgment on its claims against Saalwaechter for conversion and fraud, as well as its claim that Saalwaechter is precluded from being a bona fide purchaser. These claims are all based upon LBJA's allegation of an agency relationship between Carroll and Saalwaechter. Specifically, LBJA asserts that Carroll was Saalwaechter's agent and

8

acted on his behalf with regard to the transaction between LBJA and Kamuf. Therefore, based on this claimed agency, all of Carroll's knowledge and alleged negligent acts or omissions can be imputed to Saalwaechter such that he can be held liable on LBJA's claims of conversion and fraud and can be precluded from being a bona fide purchaser. To establish an agency relationship, three elements must be shown to exist: (1) a manifestation of consent by the principal to the agent, (2) an acceptance of authority by the agent, and (3) control exerted by the principal over the agent. *Douglas v. Monroe*, 743 N.E.2d 1181, 1186 (Ind. Ct. App. 2001).

The evidence here shows that, prior to the transactions involved in the present case, Murphy and Kamuf had been involved in several transactions involving substantial amounts of money. For example, in December 2005, Kamuf and his brother, Jeremy Kamuf, signed a promissory note in favor of Murphy for $80,000. In February 2006, the Kamufs signed promissory notes in favor of Murphy for $44,343.86, $330,000, and $400,000. At his deposition, Murphy testified that with regard to the instant transaction Kamuf told him that Kamuf and his brother wanted to buy service stations. They indicated to Murphy that they already had people set up to buy the stations back for a good profit. Kamuf further indicated that he and his brother had an option in the deal and that if they did not complete the deal by a certain date, they would lose their option money. Murphy testified that it was his understanding from Carroll that Carroll was organizing the deal and doing the paperwork while the Kamufs were getting the money together. Kamuf indicated to Murphy that he needed to be able to show the bank that the

9

property was in his name so that he could get the loan for the purchase of the service stations. Murphy stated that Kamuf and Carroll both told him that he would make a profit of $100,000 on the money he lent them, and that the property would be deeded back to him in thirty days because the service station deal would be complete by then. In his affidavit, Murphy stated that Kamuf represented to him that he needed the property as collateral for thirty days in order to buy gas stations and that at the end of that time, either the property would be returned to Murphy or he would receive $400,000. He testified in both his affidavit and his deposition that he neither received the property nor the $400,000.

In his deposition, Carroll testified that he was contacted by Larry Clark regarding Kamuf's desire to borrow money. Carroll explained that he did not know Kamuf but that Clark introduced them. He further explained that Clark had also introduced him to Saalwaechter when Saalwaechter had sold his business to Clark and two other individuals. Carroll stated that either he or Clark contacted Saalwaechter to propose a loan by Saalwaechter to Kamuf. According to Carroll, Saalwaechter was not interested in a loan, so an agreement involving a purchase of property with a buy-back option was agreed upon. Carroll testified that he had never met Murphy until Murphy came to his office to sign the documents for the LBJA/Kamuf transaction, which Carroll prepared at the direction of Kamuf. Carroll stated that he assumed Kamuf gave LBJA the $400,000 as set out in the parties' agreement but he did not know for sure.

10

Kamuf testified in his deposition that after receiving the property from LBJA, he transferred it to Saalwaechter at the direction of Carroll. Kamuf stated that at the time of the transaction he knew Murphy fairly well but that he did not know Saalwaechter.

Carroll additionally testified that Saalwaechter gave $400,000 to Kamuf as set forth in the Kamuf/Saalwaechter Agreement. The designated evidence includes a cashier's check dated September 27, 2006, written to Carroll's escrow account with Saalwaechter as remitter for $450,000.[3] The evidence also shows a second check with the same date written on Carroll's escrow account to National City Bank for $450,000 with the memo line of "Bill S – Kamuf Cashier's Check." Appellee's App. p. 77. Finally, a cashier's check dated September 27, 2006 was written to Kamuf in the amount of $450,000 with Saalwaechter as remitter. The evidence also includes a copy of the back of the last check containing Kamuf's signature.

At Carroll's deposition he was asked if he explained to Saalwaechter Kamuf's obligation to sell the farm back to LBJA. Carroll responded that he did not think he had done so because it was not relevant. He explained that it was not relevant because Saalwaechter was purchasing a farm, pursuant to Carroll's arrangement, and Kamuf was the person obligated to LBJA.

Saalwaechter testified that at the time he bought the farm, he believed it to be owned by Kamuf Farms, a large farming operation in Daviess County, Kentucky. He had had no business with Kamuf Farms prior to this transaction. He stated that Carroll was

11

handling the paperwork for the transaction, and it was represented to him by Carroll that a man named Kamuf wanted to sell some property for $400,000 to raise funds for a convenience store deal. As Saalwaechter's attorney, Carroll prepared the paperwork for the transaction. When asked what authority Carroll had on his behalf, Saalwaechter replied, "Tom really had no authority." Appellant's App. p. 34. In his affidavit, Saalwaechter affirmed that he was contacted by Carroll about providing a loan for $400,000 that would be secured by property and that he instructed Carroll to prepare paperwork whereby he would purchase the property for $400,000 and Kamuf could repurchase the property for $400,000 plus costs by a certain date. He further stated that even with an extension of the repurchase deadline, Kamuf never repurchased the property. Saalwaechter also affirmed that his agreement and dealings were with Kamuf only, that he never instructed Kamuf to take any action whatsoever regarding LBJA or Murphy, that he was unaware of any promises or representations by Kamuf to LBJA or Murphy, and that Kamuf was not his agent.

The question is whether the designated evidence and all inferences derived from that evidence demonstrate there is no genuine issue of material fact and that LBJA is entitled to judgment as a matter of law. Here the evidence fails to establish an agency relationship between Carroll and Saalwaechter for the LBJA/Kamuf transaction. There is no evidence, and LBJA points to none, showing that Saalwaechter manifested any consent for Carroll to obtain LBJA's property via the transaction between LBJA and

---

[3] Saalwaechter explained in his deposition that the extra $50,000 in the check was for a different piece of

12

Kamuf. Rather, the evidence shows that Saalwaechter and Carroll both acknowledged that the only consent from Saalwaechter to Carroll was Saalwaechter's instruction for Carroll to prepare the necessary paperwork for Saalwaechter to buy Kamuf's property for $400,000 with an option for Kamuf to repurchase the land by a certain date.

For acceptance of the authority, the second prong of an agency relationship, the same is true: there is no evidence showing Carroll accepted any authority from Saalwaechter with regard to the LBJA/Kamuf transaction. Lastly, there is no evidence of Saalwaechter's control over Carroll concerning the LBJA/Kamuf transaction. There is no evidence that Saalwaechter instructed Carroll to obtain the property from LBJA; rather, the evidence shows that Saalwaechter was approached for a loan, and, when he declined to loan money, he was approached about purchasing property. The evidence further shows that although Carroll had some knowledge of the LBJA/Kamuf transaction, it did not extend to Saalwaechter. The evidence fails to establish that Carroll was acting as Saalwaechter's agent in the LBJA/Kamuf transaction. Thus, LBJA's claims of conversion, fraud, and preclusion of bona fide purchaser status, which are all based on an agency relationship between Carroll and Saalwaechter, cannot stand. Therefore, the trial court properly denied LBJA's motion for summary judgment because LBJA is not entitled to judgment as a matter of law.

B. <u>Grant of Saalwaechter's Motion for Summary Judgment</u>

---

property that is not involved in the instant litigation. Appellee's App. pp. 68-69.

13

In addition, the designated evidence shows no genuine issue of material fact as to Saalwaechter's liability in the LBJA/Kamuf transaction. Therefore, Saalwaechter is entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing discussion and authorities, we conclude that LBJA waived the issue of a vendor's lien by presenting it for the first time on appeal. Further, the trial court did not err by granting Saalwaechter's motion to strike portions of LBJA's motion for summary judgment. Finally, the trial court did not err by denying LBJA's motion for summary judgment and granting Saalwaechter's motion for summary judgment.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.

14